465 So.2d 89 (1985)
Marvin BROSSET and Philip J. Schoen, IV
v.
CHILDS ENTERPRISES, INC., James R. Childs, Sr., James R. Childs, Jr. and Kenneth Childs.
No. 84-CA-241.
Court of Appeal of Louisiana, Fifth Circuit.
February 11, 1985.
*90 Christopher T. Grace, Jr., New Orleans, for plaintiffs-appellees.
James S. Weidner, Jr., Gretna, for defendants-appellants.
Before KLIEBERT, BOWES and CURRAULT, JJ.
BOWES, Judge.
Defendant, Childs Enterprises, Inc., appeals a judgment of the lower court in favor of plaintiff in the amount of $14,282.20, plus attorney's fees of $1,500.00. The judgment dismissed plaintiffs' claims against the other defendants, individually. We affirm the judgment as amended hereinafter.
Plaintiffs, Marvin Brosset and Philip Schoen, IV, operated a partnership known as Brosset-Schoen Insurance Consultants. As such, they provided the defendants with various insurance coverage and related services for several years. The present suit was brought in 1981, as a suit on an open account, for premiums due in the amount of $14,282.20, guaranteed and paid by plaintiffs, for portions of 1979 and 1980. Defendants disputed the characterization of the monies allegedly due as an "open account", and further disputed the amount for which they were sued. Defendants claimed to have been uninsured through plaintiff for a portion of the time for which some of the premiums are prorated, or unaware that their insurance had been renewed, and further denied contracting for such renewal. The trial judge disagreed and rendered judgment in favor of plaintiff.
On appeal, defendants have asserted once again that the trial court erred in granting a judgment as one on an open account and awarding attorney's fees; and that the trial court failed to give credits on the sum which payments defendant avers were proven at trial, and failed to determine the agency between these parties.
*91 Initially, we have no doubt that the suit was properly filed and determined to be one on an open account. La.R.S. 9:2781, prior to the 1982 amendment,[1] did not attempt to define "open account." Since the present lawsuit was filed in 1981, we are obliged to consider the law and jurisprudence at that time.
R.S. 9:2781(C), in 1981, read as follows:
For the purposes of this Section, an open account shall include debts incurred for professional services, including, but not limited to, legal and medical services, which are rendered on a continuing basis.
The 3rd Circuit, reviewing prior jurisprudence in Herb's Machine Shop, Inc. v. The John Mecom Co., 426 So.2d 762 (La.App. 3rd Cir.1983) writs denied 430 So.2d 98 (La.1983), said:
Louisiana courts have stated that, in order for a course of dealings to be considered as an open account, some of the factors to be examined are:
1. Whether there were other business transactions between the parties;
2. Whether a line of credit was extended by one party to the other;
3. Whether there are running or current dealings; and,
4. Whether there are expectations of other dealings.

Womack Brothers, Inc. v. Equipment Rental Services, Inc., 399 So.2d 661 (La. App. 1 Cir.1981); Monlezun v. Fontenot, 379 So.2d 43 (La.App. 3 Cir.1979).
The Court found the suit to be one on an open account and stated:
Filed as exhibits P-1, P-2, and P-3 are copies of invoices rendered by plaintiff to defendant for work done which indicate that from at least February 11, 1980, through March 11, 1981, plaintiff rendered services, etc. to defendant. Herbert Laurents, owner and operator of Herb's Machine Shop, plaintiff herein, testified that they had done work for defendant for at least a year prior to the last statement. The work was performed on each occasion, and plaintiff eventually billed defendant and received payment. There is nothing in the record before us to show that plaintiff required immediate payment by defendant or that plaintiff would not have performed further work had defendant requested it. We therefore find that this was an open account and that the trial court properly awarded attorney's fees to plaintiff.
*92 Here, Brosset-Schoen billed Childs for premium balances as they accrued, since at least 1978. The balances varied, representing a number of transactions. Interest was charged on the past-due balance on at least one occasion. Childs made partial payments at times, paying the balances down but not extinguishing them. Accordingly, we agree with the learned trial judge and find the suit in question was properly brought as one on open account.
Turning to the next issue, defendant argues that his 1979-80 insurance lapsed on August 16, 1980 and that Mr. Brosset told Childs that he and the company were no longer insured because of a past-due balance on premiums from 1979, and because of Childs' admitted inability to pay premiums for 1980-81 insurance. Childs contends that he subsequently sought insurance with another agent between August and November, 1980. On November 7, 1980, Childs was notified that his insurance through Brosset-Schoen would be cancelled effective November 18. His subsequently-obtained replacement policy with the other agent was effective November 19. Childs is adamant that he did not agree with Brosset to renew the insurance, and that he had been informed and believed himself to be uninsured between August and November. Brosset is certain that he discussed renewal with Mr. Childs and that Childs was well aware of his insured status. Childs claims and Brosset admits that the insurance certificates were never mailed to Childs. It would seem to be a question of one party's veracity versus the other's, except for two items of evidence.
First, and most significantly, plaintiff introduced a premium finance agreement, between AFCO and Childs, and guaranteed by Brosset, dated October 16, 1980, and signed by Childs, involving the financing of premiums of insurance for 3 policies effective August 11, 1980, for 12-month terms each. Childs admitted the genuineness of the document and his signature. The agreement shows a total of payments due of $12,033.00, and a cash down payment of $7,055.00. Brosset gave Childs several days to pay the cash payment. Brosset testified that Childs avoided returning telephone calls and messages concerning this payment, and that in November, he, Brosset, finally cancelled the policiesthe premiums due were prorated and billed to Childs, and Childs was duly notified.
Secondly, there is a claim form dated October 14, 1980, for an accident occurring September 19, 1980, involving James Childs, Jr. The claim is on the liability policy effectively dated 8/11/80-81. This policy's premium was financed in the final agreement dated 10/16/80.
We find these two documents conclusively prove that Childs knew he had contracted with Brosset to renew his insurance and that Childs knew he was covered from August 11, 1980, through the date of the November cancellation. Brosset was, by consent of both parties, the insuring agent for Childs.
Childs argues that Brosset somehow did not actually pay AFCO, and did not pay the insurer (Maryland Casualty) the premium sums which Brosset sought to recover from Childs. Plaintiff successfully rebutted that contention with testimony from Maryland Casualty's representative that all sums due the company, on premiums for Childs, were paid in full by Brosset and Schoen.
Finally, Childs contends that he was not given proper credit for all payments made on his account. Childs introduced a number of checks at trial, made out variously to Brosset & Schoen, or to Brosset himself. Childs testified that these checks were payments on the accrued premiums; Brosset testified that all checks were either credited to the Childs' account, or were in payment of a personal debt.
Childs and Brosset had had a brief partnership involving ownership of some houses; Brosset produced a bill for expenses at trial, and testified that defendants check made out to him personally for $1,495.00 was Childs' share of those expenses. Childs claimed the check was for his insurance premiums. The trial judge evidently *93 concluded that Brosset's testimony was more credible, and we cannot say that this conclusion was manifestly erroneous. The trial court is certainly in the more favorable position to make such credibility determinations, and such reasonable evaluations will not be disturbed on appeal. Canter v. Koehring, 283 So.2d 716 (La.1973). We were unable to find any evidence in the record that Childs did not receive all credits to which he was entitled, with one exception.
The summary account sheet, introduced by plaintiff at trial, shows the following balance from 1979:

 BALANCE $2,738.20
 Down-payment on finance
 agreement which was never
 paid 3,281.20
 3/80 payment 414.10 Cr.
 Auto endorsement 30.00 Cr.
 Auto endorsement 21.00 Cr.
 Credit taken 78.00 Cr.
 _____________
 $2,738.20

Bringing that balance forward to the next sheet, the account read:

 Remaining balance on account
 from 1979-80 charges $3,738.20
 10/10/80 Payment $1,000.00 Cr.

Thus the balance due from 1979 remained $2,738.20 on the account sheet even after the additional $1,000 credit was posted.
Brosset's testimony did not adequately explain this problem, and we believe an accounting error was made. The balance due from 1979-80 should have been $1,738.20, which considers all the credits legally due to the defendant.
After careful examination of the documentary evidence, as well as the testimony, we have concluded that plaintiff proved each item billed to defendant, with the above exception, and the judgment of the trial court is therefore affirmed as amended.
Judgment is rendered therefore in the sum of $13,283.20, plus attorney's fees and court costs. Costs of this appeal are assessed to appellant.
AFFIRMED AS AMENDED.
NOTES
[1] § 2781. Open accounts; attorney fees; professional fees

A. When any person fails to pay an open account within thirty days after receipt of written demand therefor correctly setting forth the amount owed and a copy of the invoices in support thereof, that person shall be liable for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Evidence of receipt of written demand by the spouse of the debtor, when they are living together as husband and wife, on behalf of the debtor may be introduced as evidence of written demand on the debtor.
B. If delivery of written demand on the debtor is attempted, but not accomplished because circumstances made delivery of written demand impossible, a notation, on the envelope containing the written demand, made by the person attempting delivery stating the date of the attempted delivery, the reasons why delivery could not be accomplished, along with the initials of the person attempting delivery and making said notation may be introduced as evidence of written demand on the debtor. If the judge in his discretion finds that sufficient evidence of due diligence in delivery of written demand has been made, he may make a conclusion of written demand for purposes of justice and find that there has been written demand on the debtor.
C. For the purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account" shall include debts incurred for professional services, including, but not limited to, legal and medical services.
D. As used in this Section, "person" means an individual, association, corporation, partnership, trust, or any other public or private legal entity.
Added by Acts 1976, No. 399, § 1. Amended by Acts 1977, No. 647, § 1; Acts 1981, No. 463, § 1; Acts 1983, No. 311, § 1.